## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PENNSYLVANIA DAIRYMEN'S
ASSOCIATION, INC.,
440 Plaza Drive
Palmyra, PA 17078,

                      *Plaintiff*,

v.

RC HERR, LLC,
346 Willow Ave.,
Camp Hill, PA 17011,

                      *Defendant*.

Case No.

## COMPLAINT

Plaintiff, The Pennsylvania Dairymen's Association, Inc. ("Dairymen" or "Plaintiff"), by and through its undersigned counsel, hereby alleges as follows for its Complaint against Defendant, RC Herr, LLC ("Herr" or "Defendant").

### <u>Introduction</u>

1.    This is an action for trademark infringement of Dairymen's trademark; unfair competition; and trademark dilution under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*; trademark dilution under Pennsylvania law; and trademark infringement and unfair competition under Pennsylvania common law.

2.    Defendant, through its website, and via its tradename "Farm Show Milkshakes", markets and advertises its milkshake product through association and use of Dairymen's trademarks.

3.    Defendant does not have a license agreement or any permission by Dairymen to use Dairymen's valuable trademarks.

4.    Defendant has and/or is willfully infringing Plaintiff's trademark by branding and marketing goods via its website (farmshowmilkshakes.com) and/or its social media platforms via purported association and/or affiliation with Dairymen, and with the intent to confuse the consuming public regarding the source of its product.

5.    Defendant is intentionally capitalizing on Plaintiff's name, marks, and goodwill to promote its business.

6.    As a result, Plaintiff brings this action for federal and state trademark infringement, unfair competition, false designation of origin and trademark dilution.

## The Parties

7.    Plaintiff is The Pennsylvania Dairymen's Association, Inc., a Pennsylvania non-profit corporation, seeking to promote and support the dairy industry in Pennsylvania.

8.      Dairymen maintains its principal place of business at 440 Plaza Drive, Palmyra, Pennsylvania 17078.

9.      Upon information and belief, Defendant, RC Herr, LLC, is a limited liability company organized under the laws of Pennsylvania, with its principal place of business at 346 Willow Ave., Camp Hill, Pennsylvania 17011.

## Jurisdiction and Venue

10.      This Court has original jurisdiction over this Complaint for infringement of a trademark, unfair competition, and false designation of origin pursuant to 15 U.S.C. § 1121(a), as well as 28 U.S.C. § 1331 (Federal Question Jurisdiction); 28 U.S.C. § 1337(a) (Commerce Regulations); and 28 U.S.C. § 1338(b) (Trademark and Unfair Competition).

11.      This Court has jurisdiction over all pendant state law claims pursuant to 28 U.S.C. § 1367(a) (Supplemental Jurisdiction) because all such claims are based upon the same or substantially the same conduct by Defendant.

12.      Defendant is subject to personal jurisdiction in this Court, as it is a business registered in the state of Pennsylvania and transacts business in Pennsylvania.

13.      The Middle District of Pennsylvania is the proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1) and (2), because Defendant's principal

place of business is located in this judicial district and a substantial part of the events giving rise to this action occurred in this judicial district.

## Dairymen and its Protected Trademark

14.     Originally formed as the Crawford Count Dairy Association in 1871, Dairymen has grown into a statewide organization with a focus on supporting Pennsylvania dairy farms.

15.     Beginning in 1953, and continuing until present time, Dairymen has served milkshakes at the annual Pennsylvania Farm Show ("Farm Show"), benefiting agricultural scholarships, youth programs and educational programs across the Commonwealth of Pennsylvania.

16.     The Farm Show is the largest indoor agricultural exhibition in the United States, drawing more than 500,000 visitors on average each year from Pennsylvania and other states.

17.     The Dairymen's milkshakes consistently rank as among the most popular food and/or beverage items sold during the Farm Show.

18.     Since 2013, Dairymen has also sold its milkshakes at various community and corporate events throughout Pennsylvania and parts of Maryland, including school sporting events, community days, and seasonal festivals.

19.     The proceeds raised through the sale of its milkshakes at the Farm Show and other events are the main source of funding for the Dairymen's

philanthropic mission that provides dairy-farming promotion and agricultural education, a mobile education lab, next-generation scholarships, the PA Dairy Princess and Promotion Program, the Calving Corner, a statewide fresh-milk distribution initiative to fight hunger in Pennsylvania and more.

20.    Through its seventy continuous years of providing milkshakes at the Farm Show, and more recently at community events and corporate outings, Dairymen has achieved a level of fame and notoriety throughout Pennsylvania for, among other things, its "farm show milkshakes" and its support of the Pennsylvania dairy industry.

21.    As a result of its seven decades of being the exclusive provider of milkshakes at the Farm Show, the Dairymen's milkshake product has been historically and colloquially referred to and otherwise known by the public as the "farm show milkshake", with such name being associated in the minds of the consuming public with Dairymen and its milkshake product.

22.    Dairymen's products, including milkshakes, are marketed and sold to consumers in connection with its trademarks.

23.    As such, Dairymen has developed federal and common law rights for its family of trademarks.

24.    Dairymen has been using PA DAIRYMEN'S ASSOCIATION and THE PENNSYLVANIA DAIRYMEN'S ASSOCIATION as a word mark

continuously, which designates Dairymen as the source, provider, licensor, or sponsor of the goods or services to which the marks are associated.

25.     In addition, to protect its valuable marks, Dairymen has obtained a United States Patent and Trademark Office ("USPTO") registration for its logo at registration no. 5,689,052:



(the "Dairymen Logo").

26.     The Dairymen Logo registration is in full force and effect and has been since its respective date of registration. A true and correct copy of the registration certificate for this mark is attached as Exhibit "A".

27.     The Dairymen Logo has obtained incontestable status under the Lanham Act, 15 U.S.C. § 1065, and is therefore conclusive evidence of the validity of that mark, of Dairymen's registration and ownership of that mark, and of Dairymen's exclusive right to use the mark in the United States.

28.     In addition to its registrations, Dairymen enjoys common law rights in the trademark PA DAIRYMEN'S ASSOCIATION and THE PENNSYLVANIA DAIRYMEN'S ASSOCIATION, through its extensive advertisement and use of

those marks in connection with its good and services throughout central Pennsylvania for decades.

29.     Dairymen's rights in the Dairymen Logo, as well as its common law rights and its rights covered by registrations, are collectively referred to as the "Dairymen Marks".

30.     Dairymen consistently and prominently displays and advertises the Dairymen Marks in connection with its goods and services.

31.     Dairymen consistently uses the Dairymen Marks in connection with various events, promotions, marketing and advertising of its mission and products, including its milkshakes.

32.     The general public has come to recognize and associate the Dairymen Marks with Dairymen's mission and high-quality goods and services.

33.     The general consuming public has for decades also recognized the Dairymen Marks exclusively with Dairymen and its goods and services.

34.     The goodwill and recognition Dairymen has built in its mission, educational programs, outreach and goods and services has become associated with the Dairymen Marks.

35.     Dairymen, either directly or indirectly or through its licensees, advertises and sells goods and services, including milkshakes, in connection with these Marks.

36.     As a result of Dairymen's extensive advertising and promotion of its goods and services using the Dairymen Marks, and through favorable industry acceptance and recognition, the relevant consuming public have come to recognize and identify Dairymen as the source of the top-quality goods and services associated and offered in connection with those trademarks.

37.     Accordingly, the Dairymen Marks are assets of incalculable value as identifiers of Dairymen and its high-quality goods and services, as well as Dairymen's extensive goodwill.

## Plaintiff and Defendant's Licensing Agreement

38.     In 2017, Dairymen and Defendant entered into a licensing and distribution relationship wherein Defendant would market and sell Dairymen's farm show milkshakes at events beyond the Farm Show.

39.     Over the course of approximately four (4) years, Dairymen provided to Defendant its farm show milkshake product for events, as well as Dairymen-branded cups with the Dairymen Logo.

40.     Defendant profited from its association with Dairymen, particularly with respect to its association with the "farm show milkshake" product, which was associated in the minds of the public with Dairymen long before the relationship with Defendant arose.

41.     In September 2021, Dairymen terminated its agreement with Defendant to sell and market Dairymen's products, including its farm show milkshake.

42.     Thereafter, on September 21, 2021, Dairymen demanded that Defendant remove all images of Dairymen's logo and milkshakes from any promotional material and social media platforms of Defendant's "brand". A true and correct copy of the September 21, 2021 email is attached hereto as Exhibit "B".

### Defendant's Infringing Uses of Plaintiff's Trademarks

43.     Following the termination of Dairymen's agreement with Defendant, and even before, Defendants have engaged in a deliberate and calculated plan to trade upon the reputation and good will established by the Dairymen, in order to sell their competing milkshake product, through the unauthorized use of the Dairymen Marks and the false association of their product with the Dairymen.

44.     Notwithstanding that there is no affiliation or relationship between Dairymen and Defendant, and that Defendant has never sold a milkshake product at the Farm Show, Defendant markets and sells a milkshake product under the name "Farm Show Milkshake" in an effort to create the perception of an affiliation with Dairymen, and/or to otherwise pass off its milkshake product as the farm

show milkshake product sold annually at the Farm Show, and throughout the year at community and corporate events, by Dairymen.

45.    With complete knowledge of the Dairymen's first-established interest in the "Farm Show Milkshake" name, and while still selling milkshakes under an agreement with the Dairymen, Defendant filed federal trademark application No. 88/232,051 for the following mark, clearly including the "Farm Show Milkshake" phrase:



46.    The '051 application was filed on December 17, 2018, for "Milkshakes" and "Hats" and issued as registration No. 5,947,693 on December 31, 2019.

47.    Defendant operates a website at the domain <farmshowmilkshakes.com>, through which Defendant operates under the tradename "FARM SHOW MILKSHAKES", and offers, advertises, and sells milkshakes.

48.     Defendant also operates various social media platforms, including INSTAGRAM, FACEBOOK, and TWITTER under its tradename "FARM SHOW MILKSHAKES".

49.     Customers visiting Defendant's website <farmshowmilkshakes.com> can navigate to portions of the website including: HOME, REQUEST A DATE, FUNDRAISERS, FIND A MILKSHAKE, ABOUT and CONTACT US, in addition to the social media platforms.

50.     Defendant's website and social media platforms are and/or were using without authorization Dairymen identifiers to advertise, sell, and offer to sell what Defendant describes as "Authentic Farm Show Milkshake[s]". [1]

51.     Defendant's website originally stated the following regarding its background:

> These milkshakes have grown their reputation for being thick & delicious at the Pennsylvania Farm Show in Harrisburg. In 2016, a group of Penn State grads with ties to Pennsylvania's agricultural industry, came together to officially form Farm Show Milkshakes to bring this iconic Central Pennsylvania treat to fundraisers throughout the mid-state. [2]

---

[1] See: https://www.facebook.com/FarmShowMilkshakes ("We bring the Authentic Farm Show Milkshake to an event or fundraiser near you!"). A screen shot of Defendant's facebook page containing is attached hereto as Exhibit "C".

[2] A screen shot of Defendant's website containing the referenced description is attached hereto as Exhibit "D". This screenshot was accessed via the web archive, and represents being active as late as August 11, 2022 (https://web.archive.org/web/20220811171027/https://www.farmshowmilkshakes.com/about).

52.     Defendants have recently changed their website to include the

following description in lieu of the above:

> In 2016, a group of Penn State grads with ties to
> Pennsylvania's agricultural industry, came together to
> officially form Farm Show Milkshakes to bring a
> GREAT milkshake to your event.

53.     Notwithstanding the above change, Defendant continues to include

the following information on its website that falsely implies an association between

its product and the product Dairymen has sold at the Farm Show for the past

seventy years:

> Who doesn't love a GREAT milkshake?
> And our milkshakes are 'shaking up' the local fundraising community.
>
> Every year in January, hundreds of thousands of people descend on the
> Pennsylvania Farm Show Complex. A significant number of those visitors make
> the trek for their favorite foods.
>
> Until recently, the only place you could enjoy Farm Show food was at the Farm
> Show in January. We are looking to change that. At a limited number of venues
> throughout the year, we will help your customers remember their Farm Show
> feeling for the other 11 months of the year.

54.     Further, Defendant's past and present advertising materials include a

number of unauthorized uses of Dairymen identifiers.

55.     By way of example only, Defendant's social media platforms include

and/or included the following images:



v.                                                                                           3

56.     Beyond falsely associating the Dairymen and the Dairymen Marks

with Defendant, the above photos were clearly modified to "insert" Defendant's

"Farm Show Milkshakes" logo in place of the true Dairymen trademark, creating

an association which intentionally misleads consumers.

57.     In addition, the "Farm Show Milkshakes" website and other

promotional materials of Defendant made further explicit uses of the Dairymen's

business name and Logo, including, by way of example only:

---

[3] See photographs and posts taken from Defendant's Instagram page, attached hereto as Exhibit "E". These images were found as late as September 29, 2022.





58.     Additionally, Defendant's marketing and metatag information integrated into its website blatantly attempted to associate Defendant/Farm Show Milkshakes with Dairymen by including masked Dairymen-identifying information in "white script" on a white background, highlighted in the following screen capture:

---

[4] This image was found at https://www.farmshowmilkshakes.com/find-a-milkshake, visited as late as September 29, 2022. A true and correct copy of the page is attached as Exhibit "F".

[5] Moreover, Exhibit "E" contains numerous other examples of association with Dairymen.



6

59.    Further, the source code from the Defendant's website included, and still includes, the following lines and information (see: view-source:https://www.farmshowmilkshakes.com/):

> "We are Pennsylvania's Favorite Milkshake on the move. Chocolate, Vanilla, &amp; 1\/2 &amp; 1\/2 Milkshakes now available in your neighborhood, and not just at the Farm Show! What used to only be served by the PA Dairymen's Association at the annual Farm Show is now appearing at events across Pennsylvania"

and

> {"name":"description","value":"We are Pennsylvania's Favorite Milkshake on the move. Chocolate, Vanilla, &amp; 1\/2 &amp; 1\/2 Milkshakes now available in your neighborhood, and not just at the Farm Show! What used to only be served by the PA

---

⁶ A true and correct copy of Defendant's website screenshot is attached as Exhibit "G" as found on: https://web.archive.org/web/20220815014349/https://www.farmshowmilkshakes.com/.

Dairymen's Association at the annual Farm Show is now appearing at events across Pennsylvania. ","property":false}],.[7]

60.     This metatag language is used by Internet search engines to locate and index website search results for end users.

61.     The use of such metatag language is for the specific intent of directing consumer internet searches to specific webpages.

62.     Here, by using metatag language that mentions the Dairymen and its milkshake product, upon information and belief, Defendant was and is attempting to have consumers searching for the Dairymen's product directed to its own website.

63.     Defendant's website and use of this information intentionally misled and misleads and confuses Dairymen customers, as well as trades upon the valuable goodwill that Dairymen has developed over decades of commercial activity.

64.     Defendant's goods overlap with, or are natural extensions of, the goods and services offered by Dairymen and are directly competitive with those goods.

---

[7] This language demonstrates explicit association with Plaintiff, and still shows up on Defendant's Website as of June 6, 2023 in the page source information at view-source:https://www.farmshowmilkshakes.com/ . Due to how voluminous the source code is, an entire copy of the source code has not been attached, but can be provided upon request from the Court.

65.     Dairymen's rights in the Dairymen Marks predate Defendant's use of the marks.

66.     Dairymen has not authorized Defendant's use in commerce, either directly or indirectly, of its valuable Dairymen Marks in connection with Defendant's goods, marketing and advertising.

67.     Dairymen has no affiliation or connection with Defendant.

68.     Defendant's egregious misuse of the Dairymen Marks, including the farm show milkshake name, has caused, or is likely to cause, great and irreparable injury to Dairymen, including irreparable injury to the goodwill and reputation embodied in those marks, for which Dairymen has no adequate remedy at law.

69.     Upon information and belief, Defendant will continue to commit the acts complained of unless permanently enjoined.

70.     Upon information and belief, Defendant's acts were deliberately and intentionally carried out in bad faith, or with a reckless disregard for or willful blindness to Dairymen's rights in the Dairymen Marks, and the farm show milkshake name, for the purpose of trading on Dairymen's reputation embodied in those marks and diluting those marks.

71.     The willful nature of Defendant's unlawful acts renders this an "exceptional case", entitling Plaintiff to an award of statutory damages, profits, treble damages, and attorneys' fees under at least 15 U.S.C. § 1117(a).

**Defendant's Interference With Contracts**

72.     Defendant's use in marketing and advertising infringes and falsely represents that they are associated and/or otherwise affiliated with Dairymen.

73.     Defendant's use of its logo was designed to cause confusion among the public.

74.     Moreover, indicative of Defendant's efforts to harm Dairymen and improperly solicit customers, Defendant caused one of Dairymen's scheduled events (specifically a food truck event at Bermudian Springs School District) to be cancelled because of claims/issues raised by Defendant associated with the phrase "Farm Show Milkshakes".

75.     Dairymen was scheduled to participate as a vendor at the Bermudian Springs School District on September 26, 2022.

76.     Upon information and belief, the School District had advertised and/or otherwise promoted the event with information that Dairymen would be present and serving its farm show milkshakes.

77.      Upon information and belief, Defendant contacted the School District and claimed that the District could not represent that they would have the farm show milkshake product at their event, because Defendant had the exclusive right to the farm show milkshake name.

78.     Dairymen was thereafter informed by the School District that Dairymen would not be permitted to participate in the School District's event as a direct result of the representations made by Defendant.

79.     Dairymen was additionally informed of an event where a customer of Dairymen's contacted Defendant, believing it to be Dairymen, based upon the confusing association caused by Defendant's website, seeking to have milkshakes provided at an event.

80.     Instead of notifying Dairymen, Defendant contracted with the customer, but thereafter canceled the contract with that customer.

81.     That customer then approached Dairymen as to why the event was canceled.

82.     On May 8, 2023, Defendant served milkshakes at an event at Fort Hunter Park under their Farm Show Milkshake logo.

83.     Upon information and belief, the event sponsor put up directional signs leading to Defendant's tent, which indicated that the milkshakes were "Pa Dairymen's Association Milkshakes".  A true and correct copy of a picture taken at the event depicting one of the directional signs is attached here as Exhibit "H" and incorporated by reference.

84.     Upon information and belief, Defendant was aware that the event sponsor had posted the signs but did nothing to correct the false association of Defendant's milkshake product with Plaintiff's.

85.     At least one patron at the event asked one of the individuals operating Defendant's tent if they were part of the Dairymen.

86.     The individual responded "yes".

87.     Dairymen has received numerous other contacts from customers and/or potential customers regarding their confusion over Defendant's product and whether there is an association with Plaintiff's milkshake product.

88.     Defendant's conduct evidences its continued attempts to associate with, and trade on, the goodwill and reputation of Dairymen, and the public's actual confusion as result of Defendant's actions.

### Plaintiff Will Continue To Suffer Irreparable Harm As A Result Of Defendant's Actual And/Or Threatened Unlawful Conduct

89.     As a direct and proximate result of Defendants' actual, threatened, and imminent conduct, Dairymen has suffered, and will continue to suffer, significant irreparable harm, as well as incalculable economic injury and loss.

90.     The ongoing and threatening nature of Defendants' unlawful actions necessitates judicial intervention in the form of permanent injunctive relief to (1) prohibit Defendants from improperly soliciting and/or advertising to Dairymen's

customers or prospects; (2) cease all use of the Dairymen Marks in any manner, including, but not limited to, advertising on Defendant's website(s) and social media accounts; (3) remove any reference and mention to Dairymen and Dairymen Marks from Defendant's website(s) and social media accounts; (4) cease contacts and interference with all partners, vendors, customers and events in which Dairymen is selling its products; and (5) cease usage of the phrase "Farm Show Milkshakes" as part of Defendant's business.

91.    Dairymen is entitled to all remedies available under law and equity.

92.    On October 13, 2022, Dairymen, through its undersigned counsel, sent a cease and desist letter to Defendant ("C&D Letter"), directing that Defendant immediately cease and desist from engaging in the conduct identified herein, as more specifically set forth in the C&D Letter.   A true copy of C&D Letter is attached hereto as Exhibit "I" and incorporated by reference.

93.    In response to the C&D Letter, Defendant made some changes to its social media platforms, but as indicated above, continues to use the Farm Show Milkshake name and logo, and continues to use Dairymen Marks to market its product and create a false association between its milkshake and the milkshake product marketed and sold by Dairymen.

## COUNT I - FEDERAL TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT (15 U.S.C. § 1114)

94.    Plaintiff incorporates by reference all preceding paragraphs as though expressly stated herein.

95.    Defendant is using the Dairymen Marks in commerce, in connection with the sale, offering for sale, distribution, and/or advertising of goods and services that do not originate with and are not sponsored by or affiliated with Plaintiff.

96.    Defendant is utilizing the Dairymen Marks in advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, and/or advertising of goods and services that do not originate with, and are not sponsored by or affiliated with, Plaintiff.

97.    Defendant's actions are likely to cause confusion, mistake, or deception as to the source of origin of the goods offered by Defendant in connection with the Dairymen Marks, in that customers and potential customers are likely to believe that those goods offered by Defendant are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to Plaintiff, when there is no such relationship.

98.    As a direct and proximate result of the likely confusion, mistake, or deception, Dairymen has suffered and will continue to suffer irreparable harm if Defendant's conduct is not enjoined.

99.     The likely confusion, mistake, or deception caused by Defendant is willful and is in violation of the Lanham Act, 15 U.S.C. § 1114.

## COUNT II - FEDERAL UNFAIR COMPETITION & FALSE DESIGNATION OF ORIGIN

100.    Plaintiff incorporates by reference all preceding paragraphs as though expressly stated herein.

101.    Defendant's use of the Dairymen Marks constitutes use of terms, names, symbols, and devices, and use of false designation of origin, all of which are likely to cause confusion, mistake, or deception as to the source of origin of the goods and services provided by Defendant, in that customers and potential customers are likely to believe that such goods and services are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to Plaintiff, when there is no such relationship.

102.    As a direct and proximate result of the likely confusion, mistake, or deception, Dairymen has suffered and will continue to suffer irreparable harm if Defendant's conduct is not enjoined.

103.    The likely confusion, mistake, or deception caused by Defendant is willful and is in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## COUNT III- COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

104.   Plaintiff incorporates by reference all preceding paragraphs as though expressly stated herein.

105.   This cause of action arises under the Commonwealth of Pennsylvania's common law trademark infringement and unfair competition.

106.   Defendant's use of its logo constitutes common law trademark infringement and unfair competition in violation of common law.

107.   Upon information and belief, Defendant's acts of common law trademark infringement and unfair competition have been done willfully and deliberately, and Defendant has profited and been unjustly enriched by sales that Defendant would not otherwise have made if not for its unlawful conduct.

108.   Defendant's willful and deliberate acts described above have caused injury and damages to Plaintiff, and have caused irreparable injury to Plaintiff's goodwill and reputation and, unless enjoined, will cause further irreparable injury, whereby Plaintiff has no adequate reedy at law.

## COUNT IV- COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

109.   Plaintiff incorporates by reference all preceding paragraphs as though expressly stated herein.

110.   This cause of action arises under the Commonwealth of Pennsylvania's common law of trademark infringement and unfair competition.

111.   Defendant's use of the Dairymen Marks constitutes common law trademark infringement and unfair competition in violation of common law.

112.   Upon information and belief, Defendant's acts of common law trademark infringement and unfair competition have been done willfully and deliberately, and Defendant has profited and been unjustly enriched by sales that Defendant would not otherwise have made if not for its unlawful conduct.

113.   Defendant's willful and deliberate acts described above have caused injury and damages to Plaintiff, and have caused irreparable injury to Plaintiff's goodwill and reputation and, unless enjoined, will cause further irreparable injury, whereby Penn State has no adequate remedy at law.

## COUNT V - TORTIOUS INTERFERENCE WITH EXISTING AND PROSPECTIVE CONTRACTUAL RELATIONS

114.   Plaintiff incorporates by reference all preceding paragraphs as though expressly stated herein.

115.   Defendant's use of the Dairymen Marks on its website and social media has deprived Plaintiff of sales to customers who were searching for Plaintiff's goods and services.

116.   Defendant's false representation of connection to Plaintiff has harmed Plaintiff.

117.   Plaintiff maintains current and prospective contractual relationships with customers.

118.   Defendant is aware of the current and prospective contractual relationships belonging to Plaintiff.

119.   Nevertheless, Defendant has interfered, and continues to actively interfere with, Plaintiff's contractual relations.

120.   Plaintiff has suffered, and will continue to suffer, financial harm as a result of Defendant diverting business away from Plaintiff, as well as confusion and misleading advertising regarding affiliation with Plaintiff, constituting interference with Plaintiff's business relationships.

**COUNT VI – FEDERAL TRADEMARK DILUTION (15 U.S.C. § 1125(c))**

121.   Plaintiff incorporates by reference all preceding paragraphs as though expressly stated herein.

122.   Plaintiff's Dairymen Marks are distinctive and "famous" within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

123.   Plaintiff's Dairymen Marks became distinctive and famous prior to the Defendant's acts as alleged herein.

124.   Defendant's acts as alleged herein have diluted and will, unless enjoined, continue to dilute and are likely to dilute the distinctive quality of Plaintiff's famous Dairymen Marks.

125.   Defendant's acts as alleged herein have tarnished and will, unless enjoined, continue to tarnish, and are likely to tarnish Plaintiff's Dairymen Marks by undermining and damaging the valuable goodwill associated therewith.

126.   Defendant's acts as alleged herein are intentional and willful in violation of Section 43(c)(1) of the Lanham Act, and have already caused Plaintiff irreparable damage and will, unless enjoined, continue to so damage Plaintiff, who has no adequate remedy at law.

127.   Plaintiff is entitled to, among other relief, an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116 and 1117, together with prejudgment and post-judgment interest.

## COUNT VII – TRADEMARK DILUTION UNDER 54 PA.C.S.A. 1124 AND COMMON LAW TRADEMARK DILUTION

128.   Plaintiff incorporates by reference all preceding paragraphs as though expressly stated herein.

129.   Through prominent, long and continuous use in commerce, including commerce within Pennsylvania, Plaintiff's Dairymen Marks have achieved secondary meaning and has become, and continues to become, famous and distinctive.

130.   Despite knowledge of Plaintiff's Dairymen Marks, Defendant willfully and wrongfully used and continues to use Plaintiff's Dairymen Marks in commerce to promote, market, and advertise its own goods and services.

131.   Defendant's willfully and wrongful use of Plaintiff's Dairymen Marks has diluted and continues to dilute the trademarks, thereby causing and continuing to cause actual damages to Plaintiff as well as irreparable harm for which there is no adequate remedy at law.

132.   By reason of the foregoing, Defendant is liable to Plaintiff for Trademark Dilution.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A. Permanently enjoining and restraining Defendant, its directors, members, officers, agents, servants, employees, parents, subsidiaries, affiliates, and all persons in active concert or participation with, through, or under it:

  i.   from committing any acts of trademark infringement, trademark dilution, and unfair competition, and from implying a false designation of origin or a false description or representation with respect to the Dairymen Marks;

  ii.  from using in any manner packaging, labels, signs, literature, display cards, Internet website, social media, or other packaging, advertising, or promotional materials, or other materials any

marks, words, or names that are confusingly similar to the

Dairymen Marks;

iii.   from making any statements on promotional materials or

advertising for its goods or services that are false or misleading as

to source or origin or affiliation with, sponsorship by, or

connection to Dairymen; and

iv.   from using any designation that is likely to disparage, tarnish or

dilute the distinctive quality of the Dairymen Marks.

B. Requiring that Defendant, within thirty (30) days after service of notice of

entry of judgment or issuance of an injunction pursuant thereto, file with the

Court and serve upon Plaintiff's counsel a written report under oath setting

forth details of the manner in which Defendant has complied with the

Court's Order pursuant to Paragraph A.

C. Requiring Defendant to account and pay over to Plaintiff all damages

sustained by Plaintiff as a result of Defendant's willful infringement, unfair

competition, and tortious interference, including Plaintiff's actual damages,

disgorgement of Defendant's profits, attorney's fees and costs, and ordering

that the amount of damages awarded Plaintiff be increased three times the

amount thereof pursuant to 15 U.S.C. §§ 1117(a) and 1125.

D. Ordering that Defendant pay Plaintiff the costs of this action, together with reasonable attorneys' fees and prejudgment interest in accordance with 15 U.S.C. § 1117.

E. Awarding Plaintiff such other and further relief as this Court deems just and proper.

Respectfully submitted,

POST & SCHELL, P.C.

Dated:  June 6, 2023

/s/ Michael W. Winfield
Michael W. Winfield, Esquire
Pa. Supreme Court I.D. No. 72680
Ryan  M. Logan, Esquire
Pa. Supreme Court I.D. 320720
Erin R. Kawa, Esquire
Pa. Supreme Court I.D. 308302
17 North Second Street, 12th Floor
Harrisburg, PA 17101
Telephone:  (717) 612-6024
Facsimile:  (717) 720-5393